JS-6

1

2

3

4

5

6

7

8

9

10

11  **IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| THE HERSHEY COMPANY and HERSHEY CHOCOLATE & CONFECTIONERY CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> POSH NOSH IMPORTS (USA), INC., <br><br> Defendant. | Case No. 2:14-cv-04028 <br><br> **[PROPOSED] FINAL JUDGMENT AND PERMANENT INJUNCTION** <br><br> Date:  October 6, 2014 <br> Time:  10:00 a.m. <br> Court Room.:  790 <br><br> Before:  Hon. Andre Birotte, Jr. |

13

14

15

16

17

18

19

20

21

22

23

24

## [PROPOSED] FINAL JUDGMENT AND PERMANENT INJUNCTION

Plaintiffs The Hershey Company ("Hershey Company") and Hershey Chocolate & Confectionery Corporation ("Hershey Chocolate") (together, "Hershey") commenced this action by filing a Complaint against defendant Posh Nosh Imports (USA), Inc. ("Posh Nosh" or "Defendant") for trademark and trade dress infringement, trademark and trade dress dilution, false designation of origin and unfair competition.  Hershey filed a First Amendment Complaint ("FAC") on which Posh Nosh has defaulted.  Hershey has now moved for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).  Having considered the motion, declarations, memorandum of points and authorities, and all other pleadings and files in this action, the Court finds:

## POSH NOSH'S DEFAULT

1.      This action is brought by Hershey against Posh Nosh under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and state law.

2.      The Court has subject matter jurisdiction over Hershey's federal-law claims for trademark and trade dress infringement, trademark and trade dress dilution, false designation of origin, and unfair competition claims under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338(a) and (b).  The Court has subject matter jurisdiction over Hershey's state-law claims under 28 U.S.C. § 1367 and, because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is complete diversity of citizenship, under 28 U.S.C. § 1332.  This Court has personal jurisdiction over Posh Nosh, and Posh Nosh was properly served.

3.     Posh Nosh has failed to answer the FAC or otherwise defend itself in the action.  Accordingly, Posh Nosh is in default.

4.     Posh Nosh is a corporation and is not an infant, it has not been declared incompetent, and it is not currently in the military or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.

5.     The motion for entry of default judgment was properly served on Posh Nosh.

### ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE

6.     "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages."  *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

### REESE'S Orange Mark and REESE'S Trade Dress

7.     Hershey Chocolate owns an incontestable, valid, subsisting and existing federal trademark registration (No. 2,256,226) consisting of an "orange-colored background covering the entirety of the packaging for the goods," for "candy and confectionery chips for baking with peanut butter as the characterizing flavor or as one of various characterizing flavors" (the "REESE'S Orange Mark").

8.     Hershey's REESE'S brand candy products have been widely advertised and sold throughout the United States for many years in packaging that features a unique combination of orange, brown and yellow elements (including the orange background of the REESE'S Orange Mark, with prominent yellow type with dark outlining).  These elements are the subject of an incontestable, valid, subsisting and existing federal trademark registration (No. 925,609) owned by

2

Hershey Chocolate for the mark REESE'S MILK CHOCOLATE PEANUT BUTTER CUPS and Design (the "REESE'S Trade Dress").

9.     The REESE'S family of products includes the famous REESE'S Peanut Butter Cup, REESE'S Peanut Butter Cup Miniatures, REESE'S PIECES candies, REESE'S WHIPPS, REESE'S Crispy Crunchy, REESE'S FAST BREAK, REESE'S Sticks and REESE'S BIG CUP, all of which are examples of how Hershey uses its distinctive REESE'S Orange Mark and its distinctive REESE'S Trade Dress on packages to immediately identify these candy products as part of the REESE'S family of products.  Representative images of product packaging embodying the REESE'S Trade Dress and REESE'S Orange mark are attached as **Exhibit A**.

10.     Hershey Chocolate also owns a number of valid, subsisting and existing federal trademark registrations for various iterations of packaging for its REESE'S brand line extensions, each of which claims a combination of orange, yellow and brown as a feature of the mark, namely Nos. 3,631,320, 4,082,204, 4,082,215, 4,082,217, 4,093,052, 4,101,179, 4,120,422, 4,152,566, 4,155,499, 4,256,316, and 4,330,229.

11.     By virtue of Hershey's substantial sales, marketing and use of the REESE'S Orange Mark and the REESE'S Trade Dress throughout the United States in connection with the REESE'S family of products, the REESE'S Orange Mark and the REESE'S Trade Dress have become famous and well known, have become distinctive of Hershey's products, and have come to identify and indicate the source of Hershey's products to consumers and the trade.

12.     The TOFFEE CRISP products sold by Posh Nosh are sold in a

3

package design that is strikingly similar to the REESE'S Orange Mark and REESE'S Trade Dress.  First, the predominant color on the TOFFEE CRISP package is a shade of orange that is identical or nearly identical to the shade of orange that is protected by the REESE'S Orange Mark and that Hershey uses in connection with its REESE'S family of products.  Second, the name TOFFEE CRISP is displayed in an identical or nearly identical shade of yellow as Hershey uses on its REESE'S packaging for the words REESE'S, PIECES, and BIG CUP, among others, and uses a slanted font similar to that of the REESE'S packaging. Third, the yellow TOFFEE CRISP text is surrounded by dark outlining that is nearly identical to the dark outlining that Hershey uses for yellow type on its REESE'S products.

13.     Given that the trade dress of the TOFFEE CRISP products sold by defendant is extremely similar to Hershey's famous REESE'S Orange Mark and famous REESE'S Trade Dress, and is used for confectionery products, defendant's sale of TOFFEE CRISP products inevitably will cause confusion among consumers as to the origin, source or sponsorship of defendant's TOFFEE CRISP products.

14.     In addition, the TOFFEE CRISP trade dress is likely to dilute the distinctive quality of the REESE'S Orange Mark and the REESE'S Trade Dress by lessening their capacity to identify and distinguish Hershey's products.

**The YORK Mark**

15.     Hershey Company owns an exclusive license (even as to the licensor) to use the famous registered trademark YORK in connection with, *inter alia*, all food and food-related products in the United States.  Hershey Company's licensor, Kraft Foods Ireland Intellectual Property Limited ("Kraft"), owns two

4

incontestable, valid, subsisting and existing United States trademark registrations for the YORK trademark (Nos. 564,557 and 1,644,557).

16.    Through substantial use, sales and promotion of products bearing the YORK mark by Hershey and its licensor, the YORK mark has become extremely well known and famous for use in connection with YORK confectionery products licensed by Hershey, has become distinctive of these products and has come to identify and indicate the source of these products to consumers and the trade.

17.    Given that the YORKIE mark used by defendant is extremely similar to Hershey Company's famous YORK mark, and is used for chocolate confectionery products, defendant's sale of YORKIE products inevitably will cause confusion among consumers as to the origin, source or sponsorship of defendant's YORKIE product.

18.    In addition, the YORKIE mark is likely to dilute the distinctive quality of the famous YORK mark by lessening its capacity to identify and distinguish Hershey Company's products.

**The MALTESER Mark**

19.    Hershey owns two incontestable, valid, subsisting and existing United States trademark registrations (Nos. 761,679 and 1,923,905) for the trademark MALTESER in connection with "candy."  The MALTESER mark has been used in the United States by Hershey and its predecessor in interest for more than 52 years.

20.    Defendant's sale of candy under its MALTESERS mark inevitably will cause confusion among consumers as to the origin, source or sponsorship of the products offered by defendant, and cause many potential purchasers to mistakenly believe that the products are the same as those offered by Hershey, or

5

that they are in some way authorized or licensed by the source of the MALTESER brand.

### The CADBURY Marks and Trade Dress

21.     Hershey Company owns an exclusive license (even as to the licensor) to use the famous registered trademark CADBURY in the United States in connection with, among other things, chocolate candy.  Hershey Company's licensor, Cadbury UK Limited Corporation ("Cadbury UK"), owns incontestable, valid, subsisting and existing United States trademark registrations covering the famous CADBURY marks and logos, including Registration No. 65,081 covering CADBURY for "chocolate"; Registration No. 230,468 covering CADBURY for, *inter alia*, "chocolate candy"; Registration No. 977,811 covering CADBURY for, *inter alia*, "candy"; Registration No. 1,107,458 covering a stylized version of the CADBURY mark for, *inter alia*, "chocolate" and "chocolates and non-medicated confectionery"; and Registration No. 1,460,259 covering a design depicting milk being from one full glass on the left and one half glass on the right (the "glass and a half" design) for "candy" (collectively, the "CADBURY Marks").

22.     Cadbury UK also owns incontestable, valid, subsisting and existing United States trademark registrations covering the names of various candy bars sold under the CADBURY brand, including CARAMELLO (Reg. Nos. 771,569 and 2,962,010) and DAIRY MILK (Reg. Nos. 1,403,327, 2,942,301 and 4,224,494).

23.     Hershey Company also owns an exclusive license (even as to the licensor) to use the distinctive trade dress associated with the CADBURY Marks (the "CADBURY Trade Dress").  The CADBURY Trade Dress features, *inter alia*, a purple and gold color scheme, the distinctive CADBURY stylized script

(typically in gold) including the large spiral "C" and the mirror-image design of the "d" and "b," and, on some milk-chocolate varieties of CADBURY products, the "glass and a half" design.  Representative images of product packaging embodying the CADBURY Trade Dress are attached as **Exhibit B**.

24.     Through substantial use, sales and promotion of products bearing the CADBURY Marks and the CADBURY Trade Dress by Hershey and its licensor, the CADBURY Marks and the CADBURY Trade Dress have become extremely well-known and famous for use in connection with CADBURY chocolate products licensed by Hershey, have become distinctive of these products, and have come to identify and indicate the source of these products to consumers and the trade.

25.     Defendant's use of marks that are identical to the CADBURY Marks, and a trade dress that is identical or nearly identical to the CADBURY Trade Dress, on chocolate products that are not manufactured, authorized, or approved by Hershey, and that are materially different from those intended by Hershey for sale in the United States, is likely to cause confusion among consumers as to the origin, source, or sponsorship of the defendant's CADBURY products.

26.     In addition, defendant's sale of CADBURY products is likely to dilute the distinctive quality of the CADBURY Marks and the CADBURY Trade Dress by lessening their capacity to identify and distinguish Hershey Company's products.

**The KIT KAT Marks and Trade Dress**

27.     Hershey Company owns an exclusive license (even as to the licensor) to use the famous registered mark KIT KAT in the United States in connection with, *inter alia*, the familiar chocolate-covered wafer confections.  Hershey

7

Company's licensor, Société des Produits Nestlé S.A. ("Nestlé"), owns an incontestable, valid, subsisting and existing United States trademark registration for the KIT KAT mark (Reg. No. 1,022,181) and a stylized version of the KIT KAT mark (Reg. No 1,535,582) (together, the "KIT KAT Marks") for use in connection with "wafer fingers in milk chocolate."

28.     Hershey Company also owns an exclusive license to use the distinctive trade dress associated with KIT KAT products (hereinafter, the "KIT KAT Trade Dress"). The KIT KAT Trade Dress features a distinctive red and white color scheme and a distinctive stylized script, which includes two oversized "K"s that dwarf the other letters in the words "Kit" and "Kat," slanted typeface, and an oval shape that surrounds the term "Kit Kat." Representative images of product packaging embodying the KIT KAT Trade Dress are attached as **Exhibit C**.

29.     By virtue of Hershey's substantial sales, marketing and use of the KIT KAT Marks and the KIT KAT Trade Dress throughout the United States in connection with Hershey's KIT KAT products, the KIT KAT Marks and the KIT KAT Trade Dress have become famous and well known, have become distinctive of Hershey's products, and have come to identify and indicate the source of Hershey's products to consumers and the trade.

30.     Defendant's use of a mark that is identical to the registered mark KIT KAT, in a stylized form that is nearly identical to the stylized mark licensed by Hershey, with a trade dress that is nearly identical to the KIT KAT Trade Dress, on products that are not manufactured, authorized, or approved by Hershey, and that are materially different from those intended by Hershey for sale in the United States, is likely to cause confusion among consumers as to the origin, source, or

8

sponsorship of the defendant's KIT KAT products.

31.    In addition, defendant's sale of KIT KAT products is likely to dilute the distinctive quality of the KIT KAT Marks and the KIT KAT Trade Dress by lessening their capacity to identify and distinguish Hershey Company's products.

**"Gray Goods"**

32.    The CADBURY and KIT KAT products imported by Posh Nosh are not manufactured by Hershey and are different in various respects from Hershey-manufactured products bearing the same marks.  For example, the imported KIT KAT and CADBURY gray goods products sold by Posh Nosh contain nutritional information required by non-U.S. regulatory authorities, non-U.S. contact information, and other differences from U.S. packaging.  The imported products also have different formulations and flavor profiles from the Hershey versions sold in the United States.

**INJUNCTIVE RELIEF IS APPROPRIATE**

33.    Hershey has built highly valuable goodwill and a strong reputation with respect to the trademarks and trade dress at issue.

34.    By selling products that are packaged and labeled identically or nearly identically to Hershey's products, Posh Nosh takes on Hershey's identity without subjecting itself to the quality control or brand management that Hershey applies to those products.  The irreparable harm that flows from these actions include:  (1) lost sales from consumers who mistakenly believe they are purchasing Hershey products, which cannot be fully measured or calculated; (2) any flaws in Posh Nosh's products will be attributed by consumers to Hershey, even though Hershey has no control over those products; and (3) the loss of distinctiveness of Hershey's

9

famous marks and trade dress from Posh Nosh crowding the market with identically or nearly identically packaged products.  Also, because of the differences in Hershey's products and Posh Nosh's products, Hershey loses the ability to control key elements of its brand images, including (1) maintaining a close connection between the REESE'S Orange Mark and REESE'S Trade Dress and chocolate/peanut butter products; (2) maintaining a close connection between YORK and peppermint; (3) maintaining packaging and labeling appropriate for the U.S. market on KIT KAT and CADBURY products; and (4) maintaining consistent flavor profiles and ingredients in U.S. KIT KAT and CADBURY products.  Moreover, if Posh Nosh were to continue selling goods using Hershey's trademarks and trade dress without being subject to Hershey's quality control, purchasers may learn to ignore the marks as a source identification, which would cause the marks to lose their significance as marks.  An injunction is needed to prevent future harm because Posh Nosh has suggested it will not voluntarily cease its conduct.

35.    There are no adequate remedies at law that can compensate Hershey's for the harm to its goodwill or reputation.

36.    The balance of hardships on entering an injunction is decidedly in Hershey's favor.

37.    The public interest in preventing consumer confusion will be served by entering an injunction.

**OTHER FACTORS FAVORING ENTRY OF DEFAULT JUDGMENT**

38.    As described above, Hershey will suffer irreparable harm, absent entry of a default judgment.

39.    Hershey has not sought any monetary damages on default judgment.

10

40. Because the well-pleaded facts of the FAC are taken as true, there is no possibility of a factual dispute.

41. There is no likelihood that Posh Nosh's default was the result of excusable neglect.

42. Posh Nosh's default makes a decision on the merits impractical, if not impossible.

## **ORDER AND PROHIBITED PRACTICES**

THEREFORE, IT IS HEREBY ORDERED that:

A.     Hershey shall have judgment in its favor against Posh Nosh.

B.     Posh Nosh, its officers, directors, agents, employees, servants, attorneys, successors, assigns and others controlling, controlled by or affiliated with defendant and all those in privity or active concert or participation with any of the foregoing (including without limitation each importer, distributor or reseller of defendant's products), and all those who receive actual notice by personal service or otherwise are permanently enjoined:

    i.     from using in any media, for any purpose (including, without limitation, importing, distributing, advertising or selling), (a) the REESE'S Trade Dress, the REESE'S Orange Mark, the TOFFEE CRISP trade dress, or any other mark or trade dress confusingly similar to or dilutive of the REESE'S Trade Dress or the REESE'S Orange Mark; (b) the YORK mark, the YORKIE mark, or any other mark confusingly similar to or dilutive of the YORK mark; (c) the MALTESER mark, the MALTESERS mark or any other mark confusingly similar to

11

the MALTESER mark; (d) the CADBURY Marks, the CADBURY Trade Dress, or any other mark or trade dress confusingly similar to or dilutive of the CADBURY Marks or the CADBURY Trade Dress; or (e) the KIT KAT Marks, the KIT KAT Trade Dress, or any other mark or trade dress confusingly similar to or dilutive of the KIT KAT Marks or the KIT KAT Trade Dress; except in connection with genuine REESE'S, YORK, MALTESER, CADBURY or KIT KAT products manufactured or authorized by Hershey for sale in the United States; and

ii.     from otherwise competing unfairly with plaintiffs.

C.     Posh Nosh shall recall from all chains of distribution all goods, product packaging, product displays, promotional materials, advertisements, commercials, infomercials and other items, the dissemination by defendant of which would violate the injunction herein requested.

D.     Posh Nosh shall deliver up for destruction any and all goods, product packaging, product displays, promotional materials, advertisements, commercials and other items in the possession, custody or control of defendant which, if sold, displayed, or used, would violate the injunction herein granted, and shall disable all web sites to the extent they contain any content, the display or use of which would violate the injunction herein requested.

E.     Pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), Posh Nosh shall serve upon Hershey within thirty (30) days after service on defendant of an order granting an injunction, or such extended period as the Court

12

may direct, a report in writing under oath setting forth in detail the manner and form in which Posh Nosh has complied with the injunction.

F.     This Court shall retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED.**

Dated:  September 29, 2014

_____
Honorable André Birotte Jr.
UNITED STATES DISTRICT JUDGE

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**EXHIBIT A**







14

1
2
3
4
5
6

7
8
9
10
11
12

13
14
15
16
17

18
19
20
21
22
23
24

15

## EXHIBIT B







17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



18



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



20



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



24



62246781.docx          [PROPOSED] JUDGMENT AND PERMANENT INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24







27

## EXHIBIT C





62246781.docx  [PROPOSED] JUDGMENT AND PERMANENT INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24





29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24





30

