UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 14-04028 AB (ASx) | Date: | November 25, 2014 |
|---|---|---|---|

Title: *The Hershey Company, et al. v. Posh Nosh Imports (USA), Inc.*

Present: The Honorable  ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order DENYING Defendant's Motion to Set Aside Default Judgment (Dkt. No. 39)

Now pending before the Court is Defendant Posh Nosh Imports (USA), Inc.'s ("Posh Nosh") motion to set aside default judgment. (Dkt. No. 39.) On September 29, 2014, the Court granted Plaintiffs' motion for entry of default judgment (Dkt. No. 34) and entered a final judgment and permanent injunction against Posh Nosh. (Dkt. No. 35.) Posh Nosh now moves to set aside the entry of default judgment pursuant to Federal Rule of Civil Procedure 60(b). After full briefing and oral argument, the matter stands submitted before the Court. Because entry of default judgment was the result of Posh Nosh's own "culpable conduct," Posh Nosh has failed to establish any good cause to set aside the default judgment and the Court **DENIES** the motion.

### I. Background

The Court discussed Plaintiffs' allegations in the order granting Plaintiffs' motion for entry of default judgment (Dkt. No. 34) and does not repeat them here. Relevant to this motion is the action's procedural history.

### A. Procedural History

Plaintiffs brought this action by filing the original complaint on May 27, 2014. (Dkt. No. 1.) On June 5, 2014 Plaintiffs served copies of the summons and complaint on Lucie Hill, an office manager at Posh Nosh's office in Los Angeles, CA. (Dkt. No. 15.) That same day, Plaintiffs also mailed a copy of the summons and complaint by first class mail to Posh Nosh in compliance with California Code of Civil Procedure section 415.20.[1]

Plaintiffs filed the operative First Amended Complaint ("FAC") on July 23, 2014. (Dkt. No. 20.) On July 29, 2014, Plaintiffs again served copies of the summons and FAC on Lucie Hill, an office manager at Posh Nosh's office in Los Angeles, CA. (Dkt. No. 24.) Plaintiffs mailed a copy of the summons and FAC by first class mail to Posh Nosh on July 30, 2014. The FAC asserted the same five trademark causes of action as were at issue in the original complaint (*compare* Dkt. No. 1 *with* Dkt. No. 20.), making Posh Nosh's deadline to file a responsive pleading August 13, 2014 (21 days after Plaintiffs filed the FAC).[2] On August 20, 2014, the clerk entered default against Posh Nosh. (Dkt. No. 29.) After the clerk entered default, Plaintiffs applied the Court for entry of default judgment on September 2, 2014 (Dkt. No. 30), which the Court granted on September 29, 2014. (Dkt. No. 34.)

### B. Posh Nosh's Knowledge of and Response to This Litigation

In addition to the history reflected in the Court's own docket, several other facts reflected in the declarations submitted along with the briefing bear on the outcome of the instant motion. As early as June 2014, Plaintiffs' counsel was in direct contact with Posh Nosh's New Jersey counsel regarding this litigation. (Dkt. No. 43, ¶9; Dkt. No. 43-3.) Counsel for Plaintiffs and Posh Nosh remained in communication about this lawsuit (and the possibility of settlement) throughout June of 2014, but settlement negotiations were unsuccessful. (Dkt. No. 43, ¶¶9-12.) Once the parties realized they were at an impasse, Posh Nosh's New Jersey counsel told Plaintiffs' counsel that Posh Nosh would "have to litigate." (Dkt. No. 43, ¶11.) On July 24, 2014, Plaintiffs' counsel asked Posh Nosh's New Jersey counsel if Posh Nosh would accept service of process of the First Amended Complaint through its New Jersey attorney, but the New Jersey attorney did not respond, and Plaintiffs served the First Amended Complaint by substituted service through Posh

---

[1] Pursuant to Cal. Code Civ. Proc. 415.20(a), service was effectuated on June 15, 2014, the 10th day after Plaintiffs served mailed copies of the FAC.

[2] Pursuant to Fed. R. Civ. Proc. 5(a)(2), Plaintiff was not required to serve Posh Nosh with a copy of the FAC at all because, by the time Plaintiff served the FAC on July 23, 2014, Posh Nosh's 21-day period to file a responsive pleading to the original complaint had already lapsed. Fed. R. Civ. Proc. 5(a)(2).

Nosh's local office. (Dkt. No. 43, ¶¶14-15.)

By the end of June, Posh Nosh had interviewed a number of California lawyers to represent it in this action. (Dkt. No. 43, ¶12.) It apparently took some time for Posh Nosh to secure California counsel because several Posh Nosh employees were out on medical leave and Posh Nosh's CEO had a pre-planned vacation to Italy scheduled. (Dkt. No. 39-2, ¶¶16-18.) However, at least by August 27, 2014, Posh Nosh had retained local counsel, Christine Arden, when Ms. Arden contacted Plaintiffs' counsel to discuss this litigation. (Dkt. No. 41, ¶¶2-3.) Ms. Arden was aware that the clerk had entered default because she had been reviewing the Court's electronic docket (CM/ECF) and called Plaintiffs' counsel to discuss the possibility of a stipulation to set aside the default. (Dkt. No. 41, ¶5; Dkt. No. 46-4, ¶2.) Posh Nosh did not, however, seek to have Ms. Arden's name added to the docket as Posh Nosh's counsel of record, which would have ensured she received immediate service of any electronically filed documents.

On September 2, 2014, Plaintiffs' counsel informed Ms. Arden that Plaintiffs would not stipulate to set aside the default and that Plaintiffs would be filing a motion for entry of default judgment that same day. (Dkt. No. 41, ¶6; *see also* Dkt. No. 46-4, ¶4.) On September 2, Plaintiffs filed their motion for entry of default judgment, which they served upon Posh Nosh by serving its New Jersey counsel and its California office. (Dkt. No. 33.) Plaintiffs also emailed a copy of the motion for entry of default judgment directly to Ms. Arden. (Dkt. No. 41, ¶6.)

Also on September 2, Ms. Arden sent Plaintiffs' counsel an email asking to meet and confer under Local Rule 7-3 regarding a competing motion to set aside entry of default that Posh Nosh intended to file. (Dkt. No. 41, ¶7; Dkt. No. 46-4, ¶4.) The parties met and conferred about Posh Nosh's proposed motion to set aside the default on September 10, 2014. (Dkt. No. 41, ¶9; Dkt. No. 46-4, ¶4.) However, Posh Nosh never filed its motion to set aside the default, nor did it ever oppose the motion for entry of default, despite the fact that Posh Nosh was aware of the default, was aware of the motion for entry of default judgment, had been served with that motion, and had local counsel capable of litigating in this Court. In fact, Posh Nosh did not make any appearance before this Court until October 14, 2014 (more than two weeks after the Court entered default judgment) when it filed the instant motion to set aside the default judgment. (Dkt. No. 39.)

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(c) courts "may set aside a default judgment under Rule 60(b)." This is in contrast to a request to set aside a simply entry of default, which the court may do under Rule 55(c) "for good cause… ." Relevant here,

Rule 60(b), in turn provides:

> "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect."

Fed. R. Civ. Proc. 60(b)(1).[3] Rule 60(b) "guides the balance between the overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits, with the interest of both litigants and the courts in the finality of judgments." *TCI Group Life Ins. Plan v. Knoebber* ("*TCI Group*"), 244 F.3d 691, 695 (9th Cir. 2000), *overruled on other grounds, Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001).

Although governed by two separate rules, the courts of this circuit hold that "the 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.* ("*Franchise Holding II*"), 375 F.3d 922, 925 (9th Cir. 2004). "To determine 'good cause', a court must 'consider[] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party.'" *United States v. Signed Personal Check No. 730 of Yubran S. Mesle* ("*Mesle*"), 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II, LLC, supra*, 375 F.3d at 925-26). However, this standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside" the default judgment. *Id.* "[T]he party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment." *TCI Group*, 244 F.3d at 696.

Moreover, although the courts of this circuit apply the same "good cause" standard to both defaults and default judgments, courts generally view motions to set aside default judgment more skeptically than motions to set aside default. *See Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986) ("The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment.") This is because, unlike a simple default, a default *judgment* is designed to be just that – a final judgment – and the courts of this circuit have repeatedly "'cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in [the] timeliness and finality' of judgments." *Phelps v. Alameida*, 569 F.3d

---

[3] Rule 60(b) includes several other grounds for relief from judgment not at issue here, including newly discovered evidence, fraud, a void judgment, or satisfaction of the judgment. Posh Nosh does not seek to set aside the judgment on any of those grounds.

1120, 1135 (9th Cir. 2009) (quoting *Flores v. Arizona*, 516 F.3d 1140, 1163 (9th Cir.2008)).

### III. Discussion

Relevant here is the first factor in the "good cause" analysis: whether Posh Nosh engaged in "culpable conduct" when it failed to respond to the complaint, the entry of default, or the motion for entry of default judgment. "If a defendant 'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable." *Franchise Holding II*, 375 F.3d at 926 (plaintiff's earlier warning to defaulting defendant that plaintiff "was proceeding with litigation" sufficient to put defaulting defendant on notice of the action and defaulting defendant's failure "to file anything with the district court until after [the plaintiff] began collecting on the default judgment" was "culpable conduct" that warranted denial of motion to set aside default judgment). To be culpable, however, the defendant's failure to answer must be intentional, that is the defaulting defendant "must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *United States v. Signed Personal Check No. 730 of Mesle*, 615 F.3d at 1092 (quoting *TCI Group*, 244 F.3d at 697.) Although courts will not generally infer bad faith for unsophisticated parties, "[w]hen considering *a legally sophisticated party's* culpability in a default, an understanding of the consequences of its actions may be assumed, *and with it, intentionality*." *Mesle*, 615 F.3d at 1093 (emphasis added). Unlike unrepresented parties, "parties represented by counsel … may be presumed to be aware of the consequences of their actions," and courts will presume bad faith. *Id*.

Here, there is no question that Posh Nosh was a sophisticated party with the benefit of legal representation throughout this litigation. Posh Nosh has been represented by counsel throughout this litigation and was well aware of the consequences of its actions. Indeed, on August 26, 2014 Posh Nosh's New Jersey counsel asked Plaintiffs' counsel for an extension of time to file an answer, at which time Plaintiffs' informed Posh Nosh that the Court had already entered default. (Dkt. No. 46, ¶19.) Posh Nosh clearly understood the implications of that fact and obtained counsel in California *the very next day*, who immediately contacted Plaintiffs' counsel about the possibility of stipulating to set aside the default. (Dkt. No. 46-4, ¶2.) Ms. Arden, was sufficiently aware of the consequences Posh Nosh's failure to answer that she announced an intention to move to set aside the default when Plaintiffs' declined to stipulate, and even met and conferred with Plaintiffs' counsel on the issue. (*Id*. at ¶¶2-5). *See also Franchise Holding II*, 615 F.3d at 924 (applying presumption of bad faith for culpable conduct where party represented by counsel and later tried to set aside default); *see also Direct Mail Specialists, Inc. v. Eclat*

*Computerized Tech, Inc.*, 840 F.2d 85, 690 (9th Cir. 1988) (presuming bad faith rule for culpable conduct where defendant was a lawyer who would be "well aware of the dangers of ignoring service of process"). However, Posh Nosh never brought such a motion, never opposed the motion for default judgment with which it was served, and offers no explanation why it failed to do either.

At the hearing on this motion, the only explanation Posh Nosh was able to articulate for its failure to file the motion to set aside default that it had announced it would file was the fact that Posh Nosh's CEO needed additional time to "digest" the consequences of a default before committing the money it would take to bring a motion to set aside the default. That is, knowing full well what default meant and that Plaintiffs' motion for default judgment was pending, Posh Nosh declined to move to set aside the default because it could not decide whether defending the lawsuit was worth the cost. That sort of intentional, strategic choice is a classic example of "culpable conduct" and the antithesis of "mistake, inadvertence, surprise, or excusable neglect." Posh Nosh's strategic delay was crucial because, had it gone through with its announced plan of moving to set aside the default judgment, the Court would have almost certainly refrained from adjudicating the motion for default judgment until it had ruled on a motion to set aside the default. *See Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) ("we think it more compatible with the spirit of Rule 55 to afford a party that has moved to vacate a default a ruling on that request prior to entry of judgment") (cited with approval in *Ringgold v. Worrall*, 880 F.2d at 1141).

At the hearing on this matter, Posh Nosh suggested it failed to oppose the motion for default judgment because Posh Nosh would be prohibited from filing an opposition by virtue of its default. However, this argument ignores the fact that it would have been unnecessary to oppose the motion for default judgment if Posh Nosh had not made the strategic decision to let the default itself go unopposed. Nor is the Court persuaded that Posh Nosh was prohibited from opposing the motion for default judgment by virtue of its default. A defaulting party is generally entitled to be heard on the issue of default judgment. *See Brock v. Unique Racquetball and Health Clubs, Inc.*, *supra,* 786 F.2d at 65 (defaulting defendant "is entitled, after his challenge to the default has been rejected, to be heard concerning the nature and details of the judgment to be entered in light of that trial record"

It is true that, despite being represented by counsel in some form since the outset of litigation, Posh Nosh was unable to answer until it retained local counsel. And if Posh Nosh had ever filed its motion to set aside the entry of default, its delay in obtaining local counsel may have been sufficient to set aside the default. But Posh Nosh did not so move. Instead it sat idly by while Plaintiffs litigated, and the court decided, the question of default

judgment. When a sophisticated party like Posh Nosh is represented by counsel and sits on its hands in the face of a complaint, a default, and a motion for default judgment, the law presumes intentionality and bad faith. *Mesle*, 615 F.3d at 1093. Even now, Posh Nosh offers zero evidence to overcome the presumption that its failure to take any action in this case after it was aware of the default, represented by local counsel, aware of the motion for default judgment, and in direct contact with Plaintiffs' counsel, was anything other than intentional and in bad faith. But the law is clear that it is Posh Nosh's burden to so prove with competent evidence. *TCI Group*, 244 F.3d at 696. If anything, Posh Nosh's evidence and argument only support the inference that it made the intentional strategic decision not to oppose default and default judgment because Posh Nosh thought the costs of doing so would outweigh the benefits. That Posh Nosh now regrets that strategic decision is not a basis to set aside a final judgment.

On September 2, 2014 when Plaintiffs filed their motion for entry of default judgment, Posh Nosh (1) had local counsel; (2) knew that the clerk had entered default; (3) was in communication with Plaintiffs' counsel; (4) knew that Plaintiffs intended to file a motion for entry of default judgment; and (5) were actually served with that motion. By the time Plaintiffs moved for entry of default judgment, Posh Nosh had everything it needed to oppose the motion, move to set aside the entry of default, or both. It did not do so, and even now offers no justification for its utter lack of diligence after it retained counsel in California.

The Court is, of course, mindful that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). But the preference for decision on the merits does not allow sophisticated defendants represented by counsel to engage in a no-lose litigation strategy of willfully sitting on the sidelines in the hopes that the court will deny default judgment and then later moving to set aside the default judgment if the bet doesn't pay off. Such attempts to game the system constitute "culpable conduct" and are, by themselves, grounds to deny the motion. *See TCI Group*, 244 F.3d at 697 (a defendant's "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process" constitute "culpable conduct").[4] Rule 60(b) is not a reset button. It is an escape valve available to parties who acted in good faith. It appears that Posh Nosh made a deliberate choice to sit

---

[4] At the hearing, Posh Nosh suggested that it had a meritorious defense to offer and that Plaintiffs would suffer minimal prejudice if Posh Nosh was afforded the opportunity to put those defenses on. Perhaps. But Posh Nosh's inability to put on a defense was a strategic choice made by a sophisticated party with the assistance of multiple attorneys. Rule 60(b)(1) does not give sophisticated parties a do-over just because their conscious litigation decisions do not pay off in hindsight. For that reason, a defaulting defendant's culpabale conduct is an *independent* and *sufficient* basis to deny relief under Rule 60(b)(1), and the Court need not address whether Posh Nosh may have had a meritorious defense had it saw fit to put one on or whether Plaintiffs would suffer prejudice by litigating the case Posh Nosh thwarted them from prosecuting in the first place.

| CV-90 (12/02) | CIVIL MINUTES - GENERAL | Initials of Deputy Clerk CB |
|---|---|---|

this one out, which is not the sort of "excusable neglect" that would warrant setting aside the default judgment. If Posh Nosh had a legitimate explanation for its total failure to litigate the default or default judgment, it was Posh Nosh's burden to provide evidence to that effect. It did not do so.

### IV. Conclusion

Posh Nosh may have been perfectly within its rights when it took the calculated risk to simply ignore this litigation. But choices have consequences, and the Court entered default judgment against Posh Nosh. What may have been sound litigation strategy is also "culpable conduct" for a sophisticated party like Posh Nosh that had "received actual or constructive notice" of this action, the entry of default, and the motion for default judgment. *Franchise Holding II*, 375 F.3d at 926; *Mesle*, 615 F.3d at 1093. "The entry of default and the default judgment were squarely within [Posh Nosh's] control" (*Id*., at 927) and the Court **DENIES** Posh Nosh's motion to set aside a default judgment that Posh Nosh had the power to avoid.